UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELLA DENISE FISHER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 16-9244 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I. SUMMARY

On December 14, 2016, Della Denise Fisher ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; December 19, 2016 Case Management Order ¶ 5.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is hereby substituted for Carolyn W. Colvin as the defendant in this action.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 23, 2013, plaintiff filed an application for Disability Insurance Benefits alleging disability beginning on April 19, 2013, due to fibromyalgia, Raynaud's disease, tendinitis in all joints, lupus, constant lower back pain, leg pain, arthritis in shoulder, neck pain, headaches, ringing in ears with hearing loss, insomnia, constant pain, and irritable bowel syndrome. (Administrative Record ("AR") 17, 121, 149-50). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on May 19, 2015. (AR 32-63).

On July 13, 2015, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 17-27). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: fibromyalgia, mixed connective tissue disease (MCTD), Raynaud's disease, lupus erythematosus, osteoarthritis, degenerative disc disease of the lumbar spine, and irritable bowel syndrome (AR 19); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 21-22); (3) plaintiff retained the residual functional capacity to perform effectively a limited range of light work (20 C.F.R. § 404.1567(b)) with additional limitations[2] (AR 22); (4) plaintiff could perform past relevant work as an office manager and

---

[2] The ALJ determined that plaintiff: (i) could lift, carry, push and/or pull up to ten pounds; (ii) could stand and/or walk two hours a day with a cane; (iii) could sit for six hours in an eight-hour work day; (iv) must avoid climbing ladders, ropes, scaffolds and hazards; (v) could no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl; and (vi) could frequently reach, handle, and finger. (AR 22).

2

an administrative assistant (AR 26-27); and (5) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 23).

On November 21, 2016, the Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

3

|  |  |  |
|---|---|---|
| | (4) | Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five. |
| | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted); see also 20 C.F.R. § 404.1520(a)(4) (2012) (explaining five-step sequential evaluation process).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

///

conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

While an ALJ's decision need not discuss every piece of evidence or be drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning with sufficient specificity and clarity to "allow[] for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal quotation marks omitted); Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation and quotation marks omitted); see also Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008) (ALJ must provide "accurate and logical bridge" between evidence and conclusion that claimant is not disabled so reviewing court "may assess the validity of the agency's ultimate findings") (citation and quotation marks omitted); see generally 42 U.S.C. § 405(b)(1) ("ALJ's unfavorable decision must, among other things, "set[] forth a discussion of the evidence" and state "the reason or reasons upon which it is based"); Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196-97 (1947) (administrative agency's determination must be set forth with clarity and specificity); cf., e.g., United States v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 294 U.S. 499, 511 (1935) ("We must know what [an administrative] decision means before the duty becomes ours to say whether it is right or wrong.").

An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457). Nonetheless, a court may not affirm "simply by isolating a 'specific quantum of supporting evidence.'" Id. at 882 (citation omitted). In addition, federal courts may review only the reasoning in the administrative decision itself, and may affirm a denial of benefits only for the reasons upon which the ALJ actually relied. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

///

5

Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) despite the error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity. Id. (citation and quotation marks omitted); Molina, 674 F.3d at 1115 (noting Ninth Circuit "[has] adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'") (citing cases).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

**C. Medical Opinion Evidence**

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians" (*e.g.*, "State agency medical or psychological consultant[s]"). 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotation marks omitted). In turn, an examining, but non-treating physician's opinion is entitled to less weight than a

treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject the uncontroverted opinion of a treating physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." Id. (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted). An ALJ must provide more than mere "conclusions" or "broad and vague" reasons for rejecting a treating physician's opinion. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted). "[The ALJ] must set forth his [or her] own interpretations and explain why they, rather than the [physician's], are correct." Embrey, 849 F.2d at 421-22.

### IV. DISCUSSION

Here, in a Physical Residual Functional Capacity Questionnaire dated August 20, 2014 ("August Questionnaire"), Dr. Lynette Tatosyan, plaintiff's treating rheumatologist, diagnosed plaintiff with fibromyalgia and mixed connective tissue disease and opined, in pertinent part, that plaintiff (i) could only lift and/or carry less than 10 pounds occasionally; (ii) could stand and/or walk

"about 2 hours in an 8-hour workday"; (iii) needed to use a cane or other assistive device while standing and/or walking; (iv) would need a job "that permits shifting positions at will from sitting, standing or walking[]" ("sit/stand option") because plaintiff "cannot sit for prolonged periods of time"; (v) would need to take "unscheduled breaks" during an eight-hour workday and thereafter would need to rest "1-2 days" before returning to work; (vi) on average would be absent from work "more than three times a month" due to "[plaintiff's] impairments or treatment"; (vii) had "[l]imited" pushing and pulling abilities in both upper and lower extremities; (viii) could frequently perform postural activities (*i.e.*, bending, climbing, crouching, balancing, kneeling, and crawling); and (ix) could only occasionally perform reaching, handling, or fingering (collectively "Dr. Tatosyan's Opinions"). (AR 354-54). Plaintiff contends, among other things, that the ALJ improperly rejected certain medical opinions provided by Dr. Tatosyan's Opinions. (Plaintiff's Motion at 9-13). For the reasons discussed more fully below, the Court agrees and finds that a remand is warranted.

First, some reasons the ALJ gave for rejecting Dr. Tatosyan's Opinions were not sufficiently specific. For example, the ALJ rejected Dr. Tatosyan's opinion that plaintiff would be limited to *occasional* reaching, handling and fingering purportedly because Dr. Tatosyan's more restrictive limitation on such functioning was "not consistent with the record," and "the clinical findings do not support greater than frequent limitations[]" stemming from plaintiff's osteoarthritis and fibromyalgia. (AR 26). Such broad and general reasons were insufficient, however, since the ALJ did not provide her own interpretations of the *specific* "clinical findings" or other evidence at issue and explain why those interpretations, rather than Dr. Tatosyan's, were correct. See Embrey, 849 F.2d at 422-23 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required,

even when the objective factors are listed seriatim.") (footnote omitted); see also McAllister, 888 F.2d at 602 (ALJ improperly rejected treating physician's opinion for "broad and vague" reasons that "[failed] to specify why the ALJ felt the treating physician's opinion was flawed").

Second, the ALJ's evaluation of Dr. Tatosyan's Opinions also appears to be incomplete and/or inaccurate in several material respects. See generally Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ may not selectively rely on only the portions of record which support non-disability) (citations omitted); Reddick, 157 F.3d at 722-23 (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record"). For example, the ALJ wrote, in part, that she had "considered" Dr. Tatosyan's general explanation that plaintiff "would be unable to sit for prolonged periods," but the ALJ's decision did not mention Dr. Tatosyan's specific opinion that plaintiff would require a sit/stand option. (Compare AR 26 with AR 352). The ALJ further wrote that she "[had] adopted the lifting, standing, walking and sitting restrictions opined by Dr. Tatosyan. . . ." (AR 26). However, the ALJ's residual functional capacity assessment did not limit plaintiff to "occasional[]" lifting/carrying as Dr. Tatosyan had – in fact, the ALJ did not identify any frequency limitation for lifting/carrying at all. (Compare AR 22 [ALJ decision stating only that plaintiff could "lift, carry, push and/or pull up to ten pounds"] with AR 352 [August Questionnaire specifying that plaintiff could lift and/or carry less than 10 pounds "[o]ccasionally"]).

Similarly, the ALJ's conclusory assertions that "there is simply *no* evidence in Dr. Tatosyan's progress notes (or *anywhere* else in the record) to *suggest* that the [plaintiff] would be absent from work [due to plaintiff's "impairments or treatment"] or require unscheduled work breaks as opined by Dr. Tatosyan" (AR 26) (emphasis added) appear to be inaccurate as well. For example, in the August Questionnaire, Dr. Tatosyan described plaintiff's symptoms as "chronic total body

pain [and] fatigue" with "pain [] every day and night" and noted "clinical findings and objective signs" of "tenderness throughout muscle groups." (AR 351). Consistently, Dr. Tatosyan's treatment records repeatedly document examination findings for plaintiff of "tenderness all over" and "18/18 [fibromyalgia] tender points[.]" (AR 262, 268, 274, 281, 287, 362-63, 371, 378, 385). In addition, Dr. Tatosyan's treatment records also reflect, among other things, that (1) in July 2013 plaintiff was prescribed "Tylenol #3 for breakthrough pain [since plaintiff was] unable to tolerate lyrica, cymbalta, [and] savella" (AR 282); and (2) in January and March 2014, Dr. Tatosyan treated plaintiff's right shoulder joint pain with injections of Kenalog and Lidocaine, after which plaintiff "was instructed to rest the injected area for 3 *days* and relatively rest it for 2-4 *weeks* thereafter" (AR 379, 386) (emphasis added). Likewise, a physical therapy treatment note from 2013 reflects complaints by plaintiff that she had experienced "[a]ll over body pain over the weekend" and she had been "in bed most of [the] day yesterday." (AR 296).

Such incorrect characterization of the medical evidence calls into question the validity of both the ALJ's evaluation of Dr. Tatosyan's Opinions and the ALJ's decision as a whole. See, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support an adverse credibility determination); Smith v. Astrue, 2009 WL 1653032, *5 (C.D. Cal. June 10, 2009) ("It is improper to reject a treating physician's opinion where he provided at least some objective observations and testing in addition to subjective opinions.") (citing, *inter alia*, Embrey, 849 F.2d at 421); Lesko v. Shalala, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error).

Finally, the Court cannot confidently conclude that such errors were inconsequential to the ALJ's ultimate nondisability determination. As noted above, Dr. Tatosyan opined, among other things, that plaintiff would need to take

10

an unspecified number of unscheduled breaks during each workday and that plaintiff could be absent from work more than three times a month due to her impairments or treatment therefor. (AR 352). The vocational expert, however, testified that there would be no jobs available if plaintiff (or a hypothetical individual with the same characteristics as plaintiff) was "absent three times a month." (AR 61, 62). Therefore, considering the foregoing specifically, and the overall record as a whole, the Court cannot say that the ALJ would necessarily have reached the same result absent the errors identified above.

## V. CONCLUSION[3]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 28, 2017

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[3]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. On remand, however, the Commissioner may wish to reevaluate evidence of plaintiff's subjective symptoms, since the ALJ's decision currently seems to lack sufficiently specific, clear, and convincing reasons for finding plaintiff's subjective complaints "not entirely credible."

[4]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).